IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**FRED REESE**                                                                                      **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 4:21-cv-128-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                              **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for period of disability and DIB. The undersigned held a hearing on July 11, 2022 [33]. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

### Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### Statement of the Case

On February 14, 2019, Plaintiff filed for DIB under Title II of the Social Security Act and alleged a disability onset date of November 30, 2018. The application was denied initially and upon reconsideration. Plaintiff filed a timely request for a hearing. The Administrative Law Judge

(hereinafter "ALJ") held a hearing on July 20, 2020, and issued an Unfavorable Decision in this cause on August 17, 2020. The Appeals Council remanded the case back to the ALJ for resolution of the following issue:

> The hearing decision does not contain an evaluation of the medical source opinion(s) in Exhibit 12F (pages 3, 6, 10, 19). In June 2019, July 2019, and April 2020, nurse practitioner Lease Wordlaw advised the claimant not to lift over ten pounds (Exhibit 12F pages 3, 6, 10, 19). This limitation is more restrictive than the residual functional capacity finding, yet the hearing decision does not discuss or consider the opinion. Consideration is needed.

Tr. 7 at 129.

The ALJ held a second hearing on May 3, 2021, which was attended by Plaintiff's attorney and an impartial vocational expert, Bruce Brawner. Thereafter, the ALJ issued another Unfavorable Decision on May 24, 2021. The Appeals Council denied the second request for review on August 10, 2021, thereby making it the decision of the Commissioner and the Social Security Administration for purposes of judicial review under the Social Security Act.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of November 30, 2018. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: benign hypertension, degenerative joint disease, history of cardiac catheterization, atherosclerotic heart disease of native coronary artery without angina, status postsurgical repair of herniated nucleus pulposus, and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)). At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).

The ALJ then assessed Plaintiff's RFC and found that he retained the ability to perform light work except the claimant can lift, carry, push, and pull up to 20 pounds occasionally and up

to 10 pounds frequently. He can stand and walk for up to six hours and can sit for up to six hours in and eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs.

At step four, the ALJ found that the Plaintiff could not perform his past relevant work. He had past relevant work as a tractor-trailer driver and a garbage truck driver. He graduated high school. He was found to have acquired work skills from past relevant work, including knowledge of driving, motor vehicle knowledge, the ability to skillfully maneuver a vehicle, and record keeping.

At step five, the ALJ considered the vocational expert's testimony and found that given all of the factors present, the Plaintiff would be able to perform the requirements of representative occupations such as a chauffeur, such as a driver for Uber or Lyft, private driver, and rental car, which are semi-skilled jobs performed at the light exertional level. Accordingly, the ALJ found Plaintiff not disabled and denied his applications for period of disability and DIB.

**Plaintiff's Medical Records**

Prior to his disability filing, on March 14, 2017, records from Dr. Ravi Pande at Greenwood Leflore Hospital revealed that the Plaintiff complained of back pain but was negative for extremity weakness, gait disturbance, or numbness in extremity. Tr. 7 at 410.

On March 13, 2019, Dr. Chustz at Jackson Heart noted that the Plaintiff was doing well, had a normal gait and was able to exercise. Tr. 7 at 738. One year later, at Plaintiff's follow up visit with Dr. Guynes at the same clinic, Jackson Heart, on March 16, 2020, his gait was again noted as normal and notes indicate that he was able to exercise. Tr. 7 at 819. Dr. Chustz saw the Plaintiff again on October 16, 2020, and noted that his gait was normal, he felt well, and he was able to exercise. Tr. 7 at 852-53.

The Plaintiff's medical records from Greenwood Leflore Hospital on June 11, 2019, reveal that Plaintiff presented to the Emergency Department complaining of shoulder pain, knee pain, and neck pain. Tr. 7 at 768. He was discharged to home and was noted as being ambulatory. Tr. 7 at 774. Ambulatory aid was noted as none. Tr. 7 at 776. Plaintiff returned to the Emergency Department on February 16, 2021, complaining of cervicalgia and low back pain. Tr. 7 at 913. Again, he was noted as having no ambulatory aid. Tr. 7 at 930.

On August 20, 2019, office visit notes from Dr. Ahmed A. Aziz with Greenwood Leflore Hospital indicate Plaintiff reported that he "is not able to walk 10 blocks, walk an unlimited disatance and walk 5 to 10 blocks. Patient reports: finds it difficult to climb stairs, exercise, get in and out of car, go down stairs, go up stairs, kneel, perform activities of daily living, put on socks and shoes and walk." Tr. 7 at 808. The physical exam notes state "gait: compensated, left side, full weight bearing, cane." Tr. 7 at 810. It further indicated that he rated his pain as 7/10, active painful range of motion, and limited range of motion. *Id.* The pain management plan included activity "as tolerated." Tr. 7 at 811. Then, Plaintiff was seen again one month later by Nurse Practitioner Downs at the same clinic on September 20, 2019, and the severity was documented as "moderate," with the problem occurring "persistently." Tr. 7 at 813. His gait was noted to be "normal, both sides, no assistive device." Tr. 7 at 815. Records dated **October 13, 2020,**[2] from CFNP Downs detail that while Plaintiff was complaining of moderate pain and decreased mobility, he had a normal gait with no assistive device, and was directed to continue activity as tolerated. Tr. 7 at 866-67. On **January 11, 2021,** at Greenwood Leflore Hospital Clinic, CFNP Downs ordered "activity as tolerated," noted that Plaintiff's gait was "normal," and he had "moderate pain with motion." Tr. 7 at 859-61.

---

[2] Dates that fell during the time span from the issuance of the ALJ's first opinion to the issuance of the ALJ's second opinion are bolded for emphasis throughout the medical chronology.

5

The medical records from Mallory Community Health Center in Greenwood, Mississippi, indicate that on June 26, 2019, Plaintiff was seen by NP Lease Wordlaw due to complaints of back pain. Tr. 7 at 824. Patient was instructed not to lift over 10 pounds. Tr. 7 at 826. At Plaintiff's visit with Nurse Practitioner Wordlaw on July 8, 2019, Plaintiff stated that "he will be obtaining a cane to assist with ambulation." Tr. 7 at 828. That same date, his gait was noted as normal. Tr. 7 at 829. On October 1, 2019, records indicate "no pain with motion," "active range of motion," and there were no instructions related to lifting restrictions. Tr. 7 at 837. Then, on January 2, 2020, Plaintiff was again seen by Nurse Practitioner Wordlaw. At this visit, the notes indicate that Plaintiff "denies pain," had normal motor strength and tone, but had some pain with ROM flexion and extension. Tr. 7 at 839. Again, there were no instructions related to lifting restrictions, and the topics of discussion included exercise counseling, nutrition counseling, and weight management education. Tr. 7 at 840. On April 1, 2020, Plaintiff was complaining of back pain as a 7 on a pain scale, and Nurse Practitioner Wordlaw instructed him not to lift over 10 pounds. Tr. 7 at 842. On July 14, 2020, Plaintiff's records indicate that his lower back pain radiates and is aggravated by "bending, changing positions, daily activities, standing, twisting and walking. Symptoms are relieved by heat, pain meds/drugs and rest." Tr. 7 at 844. Then, on July 2, 2020, Plaintiff presented for a prescription refill, denied pain, and was instructed to diet and exercise. Tr. 7 at 872. On **October 13, 2020,** Plaintiff presented for a routine chronic care visit and medication refills. Tr. 7 at 878. Plaintiff complained of tenderness and limited ROM of the left knee, and was instructed to use an ice pack as prescribed for joint pain. Tr. 7 at 880. On **January 14, 2021,** Plaintiff complained of limited ROM noted to left knee, was unable to put too much pressure on left leg, and unable to bend to the waist due to pain. Tr. 7 at 885. He was instructed to take medications as prescribed, diet, and exercise. Tr. 7 at 886.

**Discussion**

The primary issue raised by the Plaintiff on appeal is whether it was reversible error for the ALJ to exclude the use of a cane from the Plaintiff's RFC. Plaintiff alleges several reasons for the error, including failure to consider Plaintiff's need for a cane in violation of SSR 96-9P, violation of the law-of-the-case doctrine, and failure to build an accurate and logical bridge between the evidence and the final RFC determination. The Court finds these arguments lack merit, and for the reasons explained below, finds that the ALJ's decision was supported by substantial evidence and should be affirmed.

At the outset, the Court notes that the RFC assessment is based on "all of the relevant medical and other evidence" (20 C.F.R. § 416.945(a)(3)), including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007), citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001). To carry weight, subjective statements must be corroborated by objective findings. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); SSR 96-8p, 1996 WL 374181, at *5.

Furthermore, following the 2017 revisions to the Rules, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021). Instead, the ALJ considers the persuasiveness of medical opinion evidence. 20 C.F.R. § 416.920c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that

7

tend to support or contradict" the opinion. 20 C.F.R. § 416.920c(c). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 416.920c(b)(2).

To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. SSR 96-9P, 1996 WL 374185, at *7; *see also Moore v. Saul*, 2021 WL 754833, at *1 (S.D. Miss. Feb. 26, 2021). Further, courts within the Fifth Circuit have recognized that use of a cane without medical documentation establishing a need does not mandate its inclusion in the RFC. *McGowan v. Colvin*, 2016 WL 4250433, at *6 (S.D. Miss. 2016) (no error regarding a cane when the claimant used a cane but there was no medical documentation establishing the need).

In *McKinney v. Colvin*, the United States District Court for the Southern District of Mississippi found no medical documentation regarding a plaintiff's need for a cane. 2014 WL 652948, at *6 (S.D. Miss. Feb. 19, 2014). Two doctors observed the plaintiff using a cane at an examination, but the doctors did not determine that the cane was a medical necessity. *Id.* at *5. The court explained that even though the plaintiff might "use a cane, the record contains no evidence regarding its medical necessity or a physician's report requiring her to do so." *Id.* at *6. Therefore, "[t]he ALJ applied the proper legal standards in evaluating the medical opinions, and" his decision not to make a finding of the medical necessity of the cane is "substantially supported by the evidence." *Id.* Other district courts within the Fifth Circuit have made similar conclusions

8

upon review of ALJ decisions. *See, e.g., Stewart v. Colvin*, 2013 WL 1979738 (N.D. Tex. May 14, 2013); *Garcia v. Colvin*, 2016 WL 489753, at (S.D. Tex. Jan. 11, 2016), *report and recommendation adopted*, 2016 WL 454641 (S.D. Tex. Feb. 5, 2016).

Reviewing the available medical records leads the undersigned to conclude that it was not reversible error for the ALJ to exclude need for a cane in the Plaintiff's RFC.[3] In her first opinion, with regard to the use of a cane, the ALJ noted:

> There is inconsistent evidence regarding the claimant's gait. On June 26, 2019, his gait was characterized as normal (Exhibit 12F). However, his pain management provider described his gait as being abnormal and noted that he walked with a cane (Exhibit 10F). Medical evidence shows that the cane was obtained by the claimant and was not prescribed (Exhibit 12F). However, even were the cane prescribed, the objective medical evidence does not support a finding that the claimant cannot ambulate effectively as he does not use an assistive device that occupies both hands (See 1.00B2b).

Tr. 7 at 116. Similarly, in her first opinion, the ALJ determined that Plaintiff had the RFC to perform light work, except "the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant would need a cane for ambulation to get to his workstation." *Id.* The ALJ further found in the first opinion that:

> At the October 1, 2019, appointment, the claimant had normal motor strength and tone in both extremities, and had no bony abnormalities. The claimant was able to move all extremities normally and there was no cyanosis, edema, varicosities, or palpable cord. There was no tenderness to palpation in the lumbar region and the claimant's range of motion was normal in the lumbar spine (Exhibit 12F). These findings show limited ability to lift, carry, push, pull, stand, and walk. Additionally, while the claimant's limited range of motion would reasonably be expected to cause a loss of mobility that would preclude climbing ladders, ropes, or scaffolds and would limit climbing of ramps or stairs.

Tr. 8 at 118.

However, by the time the ALJ issued her second opinion on May 24, 2021, over one year

---

[3] It bears mentioning that the discrepancy regarding use of a cane was not the only change between the ALJ's first and second opinions. The ALJ also added degenerative disc disease as a severe impairment in her second opinion. Tr. 7 at 115.

9

had passed from issuance of the first opinion on August 17, 2020, and additional medical records had been obtained. The review of the Plaintiff's medical records above illustrates not only the lack of medical documentation establishing the need for a cane, but also the Plaintiff's potential improvement over this time period. There are multiple references to Plaintiff's normal gait, and to physicians encouraging the Plaintiff to exercise between August 17, 2020, and May 24, 2021.

Plaintiff urges the undersigned to find that the ALJ "inexplicably removed the RFC limitation related to the cane." [24] at 6. To the contrary, the ALJ noted in her second opinion that "the claimant was observed to use a cane, but there is no prescription for the device or other documentation of medical need." Tr. 8 at 20. This finding must be considered in conjunction with the ALJ's notation that "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective medical evidence generally does not support the alleged loss of function." Tr. 8 at 16. The Commissioner is not only correct that not only was there no documentation of medical need, there was also the ALJ's finding that the Plaintiff's alleged symptoms were inconsistent with the objective medical evidence.

While the Appeals Council remanded this case before with instructions for the ALJ to consider the medical records of nurse practitioner Lease Wordlaw, after reviewing the record before it, it appears to this Court that the ALJ complied with those instructions, analyzed each of Plaintiff's conditions, and in doing so, considered Plaintiff's subjective reports of his conditions and the objective evidence of Plaintiff's treatment for each alleged impairment.

The Fifth Circuit has held that "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Rather, "[r]emand is only appropriate 'where there is no indication the ALJ applied the correct standard." *Id.* (citation

omitted). The burden is on the party claiming error to demonstrate not only that an error is present, but also that it affected her "substantial rights." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). While additional discussion of the use of a cane may have been helpful, the undersigned is unable to find that the ALJ applied an incorrect standard. Even if the ALJ had erred, reversal is only appropriate if the Plaintiff was prejudiced. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

## Conclusion

For the reasons stated above, the Court finds that substantial evidence supports the ALJ's decision. Thus, the Commissioner's decision should be and is hereby affirmed.

**SO ORDERED** this, the 14th day of July, 2022.

/s/ Jane M. Virden
United States Magistrate Judge